REJECTED PURSUANT TO RULE 79.2(C)
COURT OF CRIMINAL APPEALS

March 20, 2015

ABEL ACOSTA, CLERK

IN THE

**COURT OF CRIMINAL APPEALS OF TEXAS**

| | | |
|---|---|---|
| LUKE ADAM STANTON, SR., | § | |
| Appellant, | § | Cause No. PD-1482-14 |
| v. | § | Cause No. PD-1483-14 |
| THE STATE OF TEXAS, | § | Cause No. PD-1484-14 |
| Appellee. | § | |

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 19 2015

Abel Acosta, Clerk

**PETITION FOR REHEARING AND/OR REHEARING EN BANC
WITH SUGGESTIONS IN SUPPORT**

TO THE HONORABLE JUSTICES OF SAID COURT:

COMES NOW, LUKE ADAM STANTON, SR., Appellant, petitions the Honorable Court of Criminal Appeals to review and rehear the decision affirming his judgment and sentence's, and respectfully requests this Honorable Court to grant rehearing and/or rehearing en banc, pursuant to Texas Rules of Appellate Procedure, Rules 41.1(a)(b) and 41.2. In support of petition, Appellant states the following:

**STATEMENT OF PROCEDURAL HISTORY**

The Court of Appeals for the Eighth District of Texas issued an OPINION on October 10, 2014, AFFIRMING Appellant's judgments and sentences. Appellant did not file a Motion for Rehearing.

Appellant, after proper Motion for Extension of Time, filed a timely Petition for Discretionary Review on January 30, 2015 in the Court of Criminal Appeals, and on March 04, 2015, Appellant's Petition for Discretionary Review has been refused.

Now on this day, Appellant is filing his Petition for Rehearing and/or Rehearing EN BANC for review by this Honorable Court of Criminal Appeals.

**QUESTIONS PRESENTED FOR REHEARING**

1. Whether Appellant can attack Complainant's credibility supported by evidence in the form of the Expert Witness Testimony Opinion? Tex. R. Evid. Rule 608(a)

2. Whether State's Expert Witness Testimony Opinion is admissible because it embraces an ultimate issue to be decided by the trier of fact. Tx.R.Evid. 704

## REASONS MERITING REHEARING AND/OR REHEARING EN BANC

1. The panel's decision is in conflict with Daubert v. Merrell Dow Parmaceuticals, Inc., 509 US 579; 113 S.Ct 2786; 125 L.Ed.2d 469 (1993); and, Kelly v. State, 824 SW2d 568 (Tex. Crim. App. 1992), emphasizing that in determining the admissibility of scientific expert testimony, such testimony is admissible only if it is both relevant and reliable. And it held that Federal Rules of Evidence "assign to the trial Judge the task of ensuring that an expert's testimony both rest on a reliable foundation and is relevant to the task at hand.

The basis of these case's are determining truthfulness or untruthfulness of the Complainant's. Thereby, this Honorable Court must determine whether State's Witness Investigator T.Crow's ("Inv. Crow") testimony as an Expert Opinion is admissible because it embraces an ultimate issue to be decided by the trier of fact, within the polygraph information, not the polygraph test or its results. This Honorable Court must also examine both the trial testimony and the Clerk Record evidence to determine whether, had the omitted evidence been presented, there is a reasonable probability of a different outcome, in that the panel merely examined the opinion of the Eighth District Court of Appeals which states the fact in the light most favorable to the jury's verdict and all contrary evidence ignored. For example, the State's Appellee Brief states: "In 2008 R.B. was Forensically interviewed at the Children Advocate Center ("CAC") ... but she refused to tell the truth ... (RR3:68-70) And, In 2009 R.B. again was Forensically interviewed and this time told the truth, but nothing happened ... (RR3:70-71) (ST-Brf at 4). Additionally, In 2008 K.B. was Forensically interviewed at the CAC ... but she refused to tell the truth ... (RR4:57-58). And, In 2009 K.B. again was Forensically interviewed and this time told the truth, but Appellant did not go to jail ... (RR4:57-58)(ST-Brf at 5). The panel completely ignored the fact that Ms L. Nelson with the CAC did a through investigation back in 2008. During Appellant's trial, on direct she testified that R.B. and K.B. made no outcry of sexual abuse. (RR4:147). Additionally, Ms N.Bryant investigator with CAC, during cross-examination: [Defense]: "But in interviewing that current case (2011), right, you have to make your determination are these girls telling the truth or not? Correct?" [N.Bryant]: "NO". [Defense]: "... so you don't think things they said about this man (Appellant) in 2009 and 2008 that were Ruled-Out were important?" [N.Bryant] : "I did not view the videotapes, NO". (RR4:22). Therefore, Inv. Crow's expert opinion to his 2009 through investigation, the polygraph information to how Appel-

lant answered, and are relevant to trier of fact, there is a reasonable probability of a different outcome.

Did the panel completely ignore the fact when Inv. Crow testified that: "The only thing I had the benefit of in 2009 was testimony of ... . There was no other evidence." (RR4:183) Under the Rule of Optional Completeness, Appellant is entitled to clear any false impression which may have been left with a jury. Inv.Crow testified to a through investigation of testimony's into the sexual abuse of K.B. and R.B. in 2009. But in fact, there was other evidence, the questions within the polygraph information. The jury was improperly left with a harmful impression that Inv. Crow made a decision purely on the testimony of the alleged victims when, in fact, it was Appellant's polygraph information, and Appellant showing no signs of deception that persuaded Inv. Crow to unfound his case in 2009. (See Texas Department of Family Protective Services Case #33997830 at 18). Here, the record does not include any details about circumstances of Appellant's examination informational questions from 2009, due to the trial courts excluding any mention of a polygraph. The probative value of the polygraph questions, even with-out the jury knowing a polygraph existed would have allowed the jury to hear how Inv. crow performed his investigation, therefore, Inv. Crow's expert opinion testimony was needed to be presented before the jury, there is a reasonable probability of a different outcome. Appellant contends that by not allowing Inv. Crow's expert opinion allowed the jury to beleave Appellant was only asked simple questions, with nothing more, allowed the State to unfairly benefit from the evidence.

The panel further ignored counteractive evidence. For example, the State's opinion states: "Statements made during a polygraph pretest interview or during an interview after examination may be admissible evidence, but the proper procedure for introducing such evidence is to redact all reference to the polygraph examination." Wright-Hoppes v. State, 725 SW2d 532,536 (Tex. App.-Houston [1st Dist] 1981); Donaldson v. State, 03-04-0000175/178-CR 2005, Tex. App. LEXIS 6985 at *12-15 (Tex. App.-Austin 2005). (STate's Appellee Brief at 13). The panel completely ignored that Inv. Crow interviewed and video recorded Appellant in 2009. (RR4:169). The video was played to the jury, except for the "polygraph portion" which was redacted, (RR4:171). The polygraph portion showed Inv. Crow requesting Appellant to take a polygraph exam and the logistics behind it. Appellant relied on the State for a fundamental fair trial, but instead they withheld polygraph informational evidence from the jury, there is a reasonable probability of a different outcome.

2. The panel's decision is in conflict with the Texas Supreme Court in E.I. dupont de Nemours & Co. v. Robinson, 923 SW2d 549 (Tex. 1995); Tillman v. State, 354 SW3d 425, 2011 Tex. Crim. App. LEXIS 1343; and Leonard v. State, 2012 Tex. Crim. App. LEXIS 477, which all cases are both legally and factually similar that the same result was reached in Tillman is also required here. (See suggestions in support herein).

3. The panel overlooked or misapprehended both matter of material facts and law, if the polygraph information was permitted, the most that could have happened would be for the jury to establish whether Complainant's K.B. and R.B. were telling the truth, the there would be a reasonable probability that the result of the proceeding would have been different. Or Complainant's would have lacked credibility as each time they told their story or made a statement to various State Officials, it changed, even before the time of trial. (See Defense trl-exhibit:5) (The State changes the Indictment). Further, Inv.Crow would have testified only to matters collateral to the events on his investigation in 2009. Thereby, the question of K.B. and R.B.'s credibility are for a jury to decide, not the Court. A jury could find Appellant credible simply because his polygraph information directly refutes K.B. and R.B.'s statements that they were sexually abused for years starting in 2002 till 2009, in that, Inv. Crow's testimony on his investigation is consistent with his expert opinion unfounding his case in 2009. The victims testimony that were given to the jury were misleading and were clearly contradicted by the polygraph information and Clerk Record.

## STATEMENT OF FACTS

At trial, Luke Stanton was convicted by a jury for multiple sex crimes and the jury elected punishment sentencing Appellant to a total of one hundred and fifty five (155) years to the Texas Department of Criminal Justice system.

The panel overlooked or misapprehended matter of material facts of these cases. There are two stages (2008-2009) and (2011) pertaining to Appellant's convictions. Appellant will disjoin to better assist this Honorable Court in the matter of material facts.

1. (2008-2009): First in 2008; There was NO cases, NO evidence of any sort to support the alleged allegations that mislead the trier of fact, Complainant's have only offered conclusory assertions, which are not sufficient to support the

- 4 -

Appellant's convictions. In addition, the State's harmful improper Opening: "The evidence is going to show you that for years ... Luke Stanton, sexually abused both of his step-daughters." (RR3:19). And, "you will hear evidence that the defendant is guilty." (RR3:30). The State's own witness Ms L.Nelson and Ms. N Bryant with the CAC contradicts any proposition Complainant's or State offered.

Next in 2009, with regards to R.B.; There's NO case, NO evidence of any sort to support the alleged allegation that mislead the trier of fact. However, there is an investigation done by CAC, in that, the conclusion was NO sexual abuse took place, from R.B.'s own statement, additionally, she stated the only problems in the house is with K.B. and M.B. (boyfriend). Subsequently, Inv. Crow did his own investigation into the matter, and the conclusion ended the same. Ruled-Out.

Next 2009 facts is K.B.; September 18; [M.B., K.B.'s boyfriend was found hidden in K.B.'s closet. After Appellant came home to discover they had had sex, Appleenat became concerned because M.B. was not supposed to be there. (RR4:63). And the Denton County Sheriff's Office ("DCSO") removes M.B.. (Appendix A).

On September 25, Appellant goes to DCSO about the problems he was having with his step-daughters, in addition to keeping M.B. from coming over while the parents were not home. (RR4:170) (Appendix B) (RR4:33).

On October 30, during Parent/Senior night on the football field, K.B. and M.B. argued, arised from Appellant and K.B.'s issue earlier. (RR4:34). Then rolled over to October 31 where K.B. could not go to any Holloween Parties.

On November 02, K.B. reports to State's witness Ms. E.Chupp, school counselor which files a report with the CAC, K.B. made allegations that Appellant was jealous of M.B. and he only wants her for himself, however, made No outcry of sexual abuse only improper comments. (Appendix D).

On November 05, prior to Appellant and Kim Stanton ("Kim") taking K.B. to the Healing Place Counselor, State's witness Ms. B.Herrian (RR7:6), K.B. tells her, and Ms. Herrian puts in her report: [when — step-father moved in when she was in the forth grade he fondled her and tried to penetrate her while in the pool.] But yet, Kim and her daughters moved into Appellant's home. (RR4:119). Additionally, in Ms. Herrian's report: [during the summer, K.B. came out of the shower and was in a towel. Stepfather made inappropriate comments and pushed her down on the bed. (Appendix C).

- 5 -

On November 09, in sum, in midst of false statements, K.B. goes to CAC for interviewing. K.B. reported: Stepfather's fingers would go inside her several different time periods. And, "one day K.B. got out of the shower with a towel on, Stepfather pushed her shoulders down on bed and put his finger inside her." (See CR-MNT to admit hearsay ...F-2011-1911-C). But yet, days before the trial K.B. does not remember if that really happened, in that, the State changes the Indictment. (See Def-Exhibit 5). As further, K.B. informs CAC that: One time in the pool, she sat on Appellant's lap and she felt "IT". She said "it". (MNT to admit hearsay ... 1911). K.B. never said penetrate - She sat on SF's lap.

Incredibily at trial K.B.'s Testimony was contradictory and/or harmful.(RR4:49)

[State]: Was there ever an incident where you came out of the shower wearing a towel that you recall?    [K.B.]: YES

[K.B.]: I got out of the shower ..., and he had sat me down on the side of bed ... And I just got up really fast and left the room ...

[State]: Did he actually do anything to you ...?   [K.B.]: NO

(RR4:39) [State]: Why don't you tell us ... the pool ...?

[K.B.]: ... He had pulled me on his lap and moved my swimming bottoms and he tried to penetrate me with his -- with his penis. ... I kept trying to pull away because it hurt alot, but he wouldn't let me go.

And the State Prosecutor continued to bolster K.B.'s requesting for details.

Did the panel overlook State's Expert witness Inv.Crow's testimony under 702? Inv.Crow testified to his full Resume, which included qualifications, knowledge, and experiences. Inv. Crow's testimony before the court and jury included Twenty Seven (27) years at DSCO as the primarily investigator, and spent an extended time in investigating Juvenile Crimes. He's kind of -- and maybe still are even regarded as the Juvenile "GURU" over there."(RR4:167). As further, Inv.Crow explains to the jury that "anybody calls the DCSO and includes the word Juvenile in their conversation, the call gets transfered to me."(RR4:167).

Inv. Crow's 2008-2009 case involvement:

"November 09, 2009, is when I actually went to the CAC and observed the forensic interviews with Child Protective Services ("CPS") investigator-(RR4:168). Claims he sat behind the and observed the interviews of R.B. and K.B.(RR4:169). As part of his investigation, Inv. Crow interviewed Appellant on November 13,2009. Inv. Crow recalls the September 2009 problems with the kids prior to his inter- view with Appellant.(RR4:170). Before the Alleged Sexual abuse allegations.(RR4:170) As stated above, Inv.Crow misleads the jury when he tells the factfinder that the

Appellant's videotape interview containing a fair and accurate depiction of the interview that he conducted back in 2009.(RR4:176-77). When, in fact, there is polygraph information that was included within his investigation. Inv. Crow claims he spoke with Kim and explains her demeanor in his own opinion,(RR4:177) then goes on to explain whats not in his investigating report. Moreover, Inv.Crow explains to the court that he did not file the case until the State prosecutor called his office on August 16, 2011. (RR4:179-80).

On December 02, 2009, Inv. Crow scheduled the polygraph examination to be conducted at the DCSO. Appellant underwent the polygraph examination, the examiner Mr.Harden ask specific questions pertaining the alleged offenses of Sexual Assault on Child against K.F.B. and Aggravated Sexual Assault on Child against R.D.B.. At the conclusion of the polygraph examination Mr.Harden met with Inv. Crow and told him Mr.Stanton had passed the polygraph examination during which time he denied the allegations without showing to be deceitful. (See CR-Inv. Crow's Grand Jury PC Report - dated 8/16/2011).

On December 03,2011, Inv. Crow **UNFOUNDED AND CLOSED** his case. (Appendix D/F).

2. (2011): Appellant will disjoin these Three (3) cases to better assist this Honorable Court: (A) PD-1482-14; (B) PD-1483-14; and (C) PD-1484-14:

(A) PD-1482-14: This case is related to the above 2008-2009 on K.B. and has already been addressed for relief requested in need of the Experts Opinion.

(B) PD-1483-14: This case is also related, in part, to the above 2008-2009 on R.B., and is a more complicated due to the alleged criminal act in a recorded video. The panel merely examined the opinion of the Eighth District Court of Appeals and all contrary evidence ignored. For example, the State's Appellee Brief states: "In early June 2011 showed K.B. the videos R.B. (secretly) took with her cell phone; K.B. decided to take R.B to the sheriff's department with the videos .."(RR3:62-68)(St.Brf:4). The panel completely ignored the fact that R.B. testified during cross-examination that: [Defense]: did you, on occasion, ... did you ask him to rub your legs ... feet? [R.B.]:I have asked him to rub my feet, yes. [Defense]:Now in that video, that we're talking about, does it show him touching your vagina? breast? penetrating your vagina ...? performing oral sex on you? you performing oral sex on him? you touching his penis? [R.B.] answers "NO" to all questions. [Defense]: Basically, it's a videotape of him rubbing your legs? [R.B.]"YES" [Defense] taken in June 2011? [R.B.]"YES". (RR3:10-11).

The panel completely ignored the contradictory statements and/or testimony evidence. State's Appellee Brief states: K.B. decided to take R.B. to DCSO. State's witness Deputy B.Nelson's testimony: [State] On June 04,2011, ... you got dispatched back to DCSO ... who was there, what did they report? [Nelson] "I made contact with K.B. and R.B."(RR7:25). "I spoke to K.B., and she wanted to know the status in reference to R.B. because she had reported a sexual contact to her school, in turn, made contact with CPS." "From that point she said the reason she was doing that was because between that time and that day that she was speaking to me, she had been -- had another sexual contact with her stepfather."(RR7:26). But yet, State's witness B.Adams school counselor puts in his report, statement of events: In sum, on May 31,2011, R.B. had nothing to say so R.B. was excused back to class; on June 01,2011, "R.B. informed me that when she was in 5th grade her stepfather, touched her and her older sister inappropriately." Then stated the behavior has not happened since the 5th grade. And, on June 02,2011, R.B. reported stepfather touched her upper thigh inappropriately afterwards, tried to grab her crotch/vagina.(See CR-MNT to admit hearsay No.1913). As further, for this June 04,2011, K.B. reported incident to occur after R.B.'s alleged outcry on June 02,2011, is irrealizable. The records reflect Appellant move out of his home on June 01, 2011. (4RR at 128:23)

(C) PD-1484-14: This case is on A.A., and not related to 2008-2009. However, is inherent. There is NO evidence of any sort to support the alleged allegation made that mislead the factfinder. Clearly it was based on K.B. and R.B.'s cases misleading the trier of fact of credibility and the State's improper closing. The panel completely ignored the contradictory testimony of A.A.. State's witness B.Adams (A.A.'s outcry) report states: On May 31,2011, A.A. and R.B. came to his office to report R.B.'s stepfather rubbed her feet, legs, and only grabbed her butt for a moment, then grabbed her crotch/vagina. R.B. could not see because she was watching TV with her back to A.A. and stepfather. At this time R.B.'s mom, Kim walks into the room and A.A. leaves, then tells R.B. what happens then the two girls leave returning to A.A. house.(CR-MNT to admit hearsay F-2011-1913-C). Conflicting State's witnesses testimony:

[R.B.] "I was on the computer."(RR3:57) and "I could see him rubbing her feet." (RR3:58).

[Kim] "I walked in the room ... No, Luke did not get up. And I recall, sitting on the bed." [Defense] Did ... Alyssa jump up and leave the room? [Kim] "... I know they both eventually ... got up and left the room, yes." (RR4:136).

[A.A.] (RR4 at 88) [State] "What happened when Kim left?" [A.A.] "He started rubbing on ... on my private areas. My butt and my vagina." And

[A.A.] Kim came back, I got up. I left the room. and told R.b. , let's go. And I went into her bedroom and I told her I was ready to go to my house. [State] When you were in R.B.'s room, did you tell her what just happened? [A.A.] NO! [A.A.] Luke took us home to my house. And I told R.B. what happened. She was like, I -- I can't believe that. She was Surprised. (RR4:91-92).

## State's Prosecutors improperly vouching Victim's Testimony:

Closing argument by the State: "And let's talk a little bit about Alyssa's story and why we know we can believe Alyssa. The first thing is the Alyssa has no reason to lie. Right? ... There's no reason for her to lie. ... Now, we either have to believe that somebody is lying about that, which doesn't make sence. That's not a fact that there's any reason to lie about. ... None of that makes sence unless she's telling the truth. ( RR6: 5-6 ).

## Suggestions in Support of Rehearing and/or Rehearing En Banc

The Eighth District Court of Appeals' decision that Appellant could not overcome the presumption that the decision of Polygraph Information are inadmissible was arbitiary or unreasonable as to an Experts Opinion resulted in both an unreasonable determination of the facts in light of the evidence presented and an unreasonable application of Daubert v. Merrell Dow Pharmaceuticals, Inc., because trial court's failure to even allow defense counsel to ask the State's Expert witness Inv. Crow's opinion pertaining to the polygraph information and before the conclusion of unfounding and closing his case in 2009 was unreasonable on the attack of Complainant's credibility supported by testimony evidence. Expert Inv. Crow re-opened his cases in 2011, based on the same alleged allegations presented in 2009 without explanation or his decision to go against other Experts in the field. As in Jorden, the expert had been told the facts of the case, applied the theories to specific facts, and explained how they might undermine the reliability of the identification process. 928 SW2d 550 (Tex. Crim. App. 1996). Here, the case at bar, Expert Inv. Crow exhibited knowledge of specific facts of his case and could tie the scientific principles on which he could have testified to within the facts of his case, other than to postulate generally. Thus, Appellant has demonstrated that Expert Inv. Crow's testimony would have "Assisted the trier of fact" and was "sufficiently tied" to the pertinent facts of his case.

In Leonard, this Court of Criminal Appeals' permitted the Polygraph Examination and its Results, the Expert was qualified to testify to his opinion in the field of sex offenders, he testified that polygraph exams are commonly used and reasonably

- 9 -

relied upon by experts in the field in forming opinions. This Court concluded that even if the evidence was generally inadmissible, it was admissible as basis of an expert's opinion. 2012 Tex. Crim. App. LEXIS 477. As here, case at bar, The State pointed out, Inv. Crow's an Expert in his field, has the qualifications, experience and knowledge of thirty one (31) years as the "GURU" Juvenile crime investigations. And Law Enforcement rely on commonly used polygraph exams in their investigation and are reasonably relied upon by other experts in the field. Moreover, Appellant's polygraph exam was the basis for Inv. Crow's opinion of unfounding and closing his case in 2009, before re-opening it in 2001.

In Tillman, the trial court errored under Tex.R.Evid. Rule 702 in holding that a defense expert witness was denied to testify before the jury because the evidence which was reliable and relevant, would have assisted the jury by increasing juror's awareness of biasing factors in eyewitness indentification. 2011 Tex. Crim. App. LEXIS 1343, 394 SW3d 425. The case at bar, is similar to this case because Inv. Crow is an expert in his field and was denied to testify under Rule 702 which will be addressed below.

Unlike the cases above, in Hartman, the State failed to make a proper showing for the admissibility of scientific expert testimony, therefore, this Court of Criminal Appeals' Reversed and Remanded. 946 SW2d 60 (Tex. Crim. App. 1997). The Supreme Court noted that "under the Rules, the trial judge must ensure that any and all scientific testimony or evidence addmitted is not only relevant, but reliable." Daubert, 509 US 579, 113 S.Ct. 2786.

Under the circumstances here, the State has the burden to show reasonableness supporting the failure to allow defence counsel to ask the expert on his opinion of his investigation and into the polygraph information evidence. For the Courts to suggest that the evidence against Appellant is overwhelming and therefore would not make a difference would be arbitrary and a unreasonable determination.

Due to the extent that Court of Criminal Appeals have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness — of the state court's treatment of the contested issue. In that, the Appellant refers this Court to Tillman v. State, 2011 Tex. Crim. App. LEXIS 1343. As was the case in Tillman, the issue is not whether Appellant is innocent, but whether the trial court abused its discretion when it excluded reliable, relevant evidence that would have assisted the trier of fact by increasing the juror's awareness of biasing factors in polygraph exam information.

The question under Tex.R.Evid. Rule 702 is not whether there are some facts in a case that an expert failed to take into account, but whether the expert's testimony took into account enough of the pertinent facts to be of assistance to the trier of fact on a fact in issue. An expert's failure to account for some facts is a matter of weight and credibility, not admissibility. The case herein, the jury should have had the benefit of the expert Inv. Crow's testimony because the polygraph information was crucial to the Appellant's case to refute the misleading testimony on the alleged allegations, regardless of any suggestion the State could have made. Daubert created the "fit" analysis to meet Fed.R.Evid. Rule 702's "helpfulness" standard, which requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility. This necessary connection is described as one of "fit". Notwithstanding, the trial court need not exclude expert testimony when the general subject matter is within the comprehension of the average juror, as long as the witness has some specialized knowledge on the topic that will "assist" the jury. Thus, the question under Tex.R.Evid. Rule 702 is not whether the jurors know something about the subject, but whether the expert can expand their understanding in a relevant way.

The case herein, Expert Inv.Crow was very knowledgeable of his case, he had reliable information that was relevant to the Appellant's guilt/innocence phase of the trial that was relevant to the trier of fact in their determination. In Jordan v. State, this Court of Criminal Appeals' specifically addressed the "fit" aspect of the relevance inquiry. There, the proffered expert "answered questions about the specific facts of the case and how they might be affected by the factors he testified to", "stated his opinion about the reliability ...," and "Identified facts in the case that he believed impacted ...".ID at 556. Like the expert in Jordan, Inv. Crow could have tied the relevant facts of his case to the scientific principles about which he could have testified, if the trial court not have abused its discretion in not allowing defense counsel to arise to the issue.

As further, the State proved that Expert Inv. Crow's testimony was relevant and reliable. The State concedes that Inv. Crow proved to be the "GURU" expert in Juvenile sex crimes through profession and he assisted the CAC/CPS and maintains that is the evidence proffered to support his expertise in the area of polygraph information and Child Sexual Assault. The State also agrees that Inv. Crow's expert testimony would assist the trier of fact to understand and determine a fact in issue. Accordingly, Inv. Crow "demonstrated knowledge of the facts of his case and made an effort to connect his opinion with those facts." Moreover, Inv.

- 11 -

Crow knew about the specifics of his case as well as spoken with the witnesses. Therefore, the Court of Appeals' improperly excluded Inv. Crow's expert testimony because it was indeed relevant and reliable as it satisfied the three requirements of Nenno, 970 SW2d 549,561, for "softsciences." The case herein is a reason for the Courts to recognize that there is a place for experts in the area of polygraph information in criminal trials. And it is undisputed Inv. Crow is an expert in that field and subject matter and could have proposed to discuss is within the scope of that field. In addition, Appellant contends that Inv. Crow's testimony would have been aimed at the very procedure used in his case. Inv Crow was familar with the polygraph information and procedure at issue, and the proposed testimony would explain the general suggestiveness of the specific type of polygraph test used here. Appellant points out in his Petition for Discretionary Review at 7, that in the 2011-2012 Edition of Professor David L. Faigman's Modern Scientific Evidence studies backed up Inv. Crow's testimony. Further Inv. Crow's expert testimony would be helpful to the jury because jurors really do not fully understand polygraph information and the possible bias of an incorrect procedure.

In the final support, Appellant sought Inv. Crow's expert testimony to discuss the suggestive nature of the specific interviewing process used in his 2009 case, Appellant proposed to do nothing more than what other experts are allowed to do everyday, testify in the hypothetical, Appellant analogizes the situation to other Child-Abuse cases in which experts are allowed to testify about "delayed outcry syndrome." In such case, the experts do not claim to know whether that syndrome was in play in any given case, but the testimony is helpful to the jury and typically permissible, as it was in this case.

Courts have held that in determining whether a state court has reasonably applied United States Constitutional Law, cases which have decided "factually similar issues" should be considered. in such, Leonard v. State, 2012 Tex. Crim. App. LEXIS 477. The facts of Tillman are highly similar to those here, the same result should apply.

Had the panel considered all of the evidence presented at trial, together with the evidence that Appellant had presented and the Inv. Crow's expert testimony on his withheld polygraph information, it is clear that there is at least a reasonable probability of a different outcome to Appellant's trial.

## CONCLUSION

For the foregoing reasons, Appellant Luke Adam Stanton, SR. prays that this Honorable Court of Criminal Appeals' GRANT his rehearing and/or rehearing en banc, and that upon rehearing and/or rehearing en banc, the Honorable Court of Criminal Appeals' Reverse and Remand for a new trial to allow the evidence to be presented to the factfinder, he further prays for any other relief the Court deems just and proper under the circumstances.

Respectfully Submitted,

__March 26, 2015__
Date

Luke Stanton #1830011
TDCJ - Michael Unit
2664 FM 2054
TN. Colony, Texas 75886

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above foregoing Rehearing and/or Rehearing En Banc with Suggestions in Support petition has been sent by United States Mail, postage paid, to Charles E. Orbison, Assistant Criminal District Attorney, 1450 East McKinney Street, 3rd Floor, Denton, Texas 76209.   WITHOUT APPENDIX'S  Added a TABLE OF APPENDIX
TDCJ does not make copies for any reasons.

On this the __16th__ day of MARCH, 2015.

Luke Stanton #1830011

- 13 -

# TABLE OF APPENDIX

| | | | Page |
|---|---|---|---|
| A) | POLICE REPORT 9/18/2009 | | 5 |
| B) | POLICE REPORT 9/25/2009 | | 5 |
| C) | CAC/CPS INVESTIGATION REPORT | Pg 11 OF 18 | 5 |
| D) | CAC/CPS INVESTIGATION REPORT | Pg 16 OF 18 | 5,7 |
| E) | OPEN | | |
| F) | CAC/CPS INVESTIGATION REPORT | Pg 18 OF 18 | 7 |

APPENDIX   A

POLICE REPORT   9/18/2009

Incident #: 1476407     Case #: 09-82973     Rcvd By: 3282
                                              Date/Time: 09/18/09 04:05pm

How Rptd  : P (BY PHONE)
Rptd By   : GAWNE, PIERCE
Address   :
CSZ       :
Phone     :
Phone(wk) :
Complaint : DISTURBANCE
Date/Time : 09/18/09 04:05pm

Location  :
                                    Subdiv  : UA (UNINCORPORATED)
                                    Area    : B-1 (SHERIFF B-1)
Address   : 5857 MILLS RD
CSZ       : DENTON, TX             Priority: 1 (EMERGENCY)
Phone     :                        Hazard  :

Officer/Unit Assigned........  Date....  Disp. Arr.. Clr.. Tot.. Disposition...
3446 (VELO, GILBERT)           09/18/09  16:13 16:24 17:25 01:12 N8 (NO REPORT)
2262 (MCCONNELL, DUSTIN W.)    09/18/09  16:13       16:36 00:22 N1 (DISREGARDE

Details   : 3282| 09.18.09 16:05:36| HIS SON TEXT MESSAGED HIM AND ADV
            THAT HE WAS SCARED AND NEEDED HELP/IS AFRAID OF LUKE STATTON
            WHICH IS HIS GF'S STEP DAD/ACTOR IS THROWING A FIT/SON IS
            HIDING IN THE CLOSET AND SCARED AND WANTS HELP/GO MAYHILL RD
            TO MILLS AND GO EB ALMOST TO THE END/LAST HOUSE ON THE LEFT
            BEFORE TRINITY RD/BLUE FRAME HOUSE WITH BLUE SIDING/TOW
            TRUCK POSS IN THE YARD/FACES MILLS RD/COMP ADV HE IS GOING
            OVER THERE NOW/COMP IS DRIVING A FORD F150 WHITE IN
            COLOR/HIS SON IS 17YOA | 3282| 09.18.09 16:09:20| RECEIVED
            MESSAGE ABOUT 10 MIN AGO | 3282| 09.18.09 16:09:53| HAS
            GUN/STATES OTHER NIGHT HE WAS THREATENING TO SHOOT HIMSELF
            THE ACTOR LUKE | 3282| 09.18.09 16:10:10| ACTOR DAUGHTER
            THERE ALSO 17YOA AND ALSO HAS A 12YOA | 3282| 09.18.09
            16:10:43| STATES ACTOR MAY DO DRUGS | 3282| 09.18.09
            16:11:00| CALLER IS CONCERNED BOUT HIS SON | 3282| 09.18.09
            16:11:16| CALLER IS ABOUT 3 MIN FROM THE LOCATION AND CAN
            TRY TO GET ACTUAL ADDRESS AND CALL BACK | 3282| 09.18.09
            16:12:04| ADV COMP TO CALL BACK IF ANYTHING ELSE HAPPENS
            BEFORE DEPUTY ARRIVES/WILL CALL BACK WITH HOUSE ADDRESS |
            3282| 09.18.09 16:13:10| ADDRESS CHANGE FROM '5000 MILLS RD'
            | 3534| 09.18.09 16:13:05| NOTHING INHOUSE FOR LUKE STATON
            OR LUKE STATTON | 3282| 09.18.09 16:13:10| COMP BACK ON THE
            PHONE SAYS SON SENT HIM ANOTHER TEXT AND CORRECT ADDRESS IS
            5857 MILLS RD | 3534| 09.18.09 16:13:38| NOTHING INHOUSE AT
            5857 MILLS RD FOR 2009 | 3282| 09.18.09 16:15:21| 07/28/08
            LAST CALL AT RES FOR ANIMAL COMP | 3394| 09.18.09 16:21:21|
            SON IS MATTHEW GAWNE | 3394| 09.18.09 16:21:37| FATHER IS
            PARKED ON THE STREET A LITTLE WAYS FROM THE HOUSE | 3394|
            09.18.09 16:21:54| CALLER WIFE HAS CALLED THE ACTORS WIFE
            AND TOLD HER AND SHE SAYS HE HAS BEEN OUT OF CONTROL | 3479|
            09.18.09 16:34:43| COMP CALLED BACK AND ADVISED THE KIDS ARE
            PROBABLY STILL HIDING IN THE CLOSET | MOBL 3446| 09/18/2009
            17:25:43| MADE CONTACT WITH ALL PARTIES ENVOLVED IN THIS
            INCIDENT. ALL PARTIES STATED IT WAS VERBAL ONLY, NO SIGNS OF
            ASSAULT OR THAT ONE WILL OCCUR. THE JUVENILE MALE LOCATED
            INSIDE THE RESIDENCE WAS RELEASED TO HIS MOTHER. NO FURTHER
            ACTION WAS TAKEN AT THIS TIME.

APPENDIX    B

POLICE REPORT    9/25/2009

Incident #: 1478624    Case #: 09-85190    Rcvd By: 2408
                                            Date/Time: 09/25/09 01:17pm

How Rptd : P (BY PHONE)
Rptd By  : STANTON,LUKE
Address  : 5857 MILLS RD
CSZ      : DENTON TX,
Phone    : 214-929-1186
Phone(wk):
Complaint: CRIMINAL TRESPASS-REPORT
Date/Time: 09/25/09 01:17pm

                                    Subdiv : UA (UNINCORPORATED)
Location : MAIN JAIL               Area   : B-1 (SHERIFF B-1)

Address  : 127 N WOODROW LN        Priority: 3 (REPORT)
CSZ      : DENTON, TX 76205        Hazard  :
Phone    : 214-929-1186

Officer/Unit Assigned........  Date.... Disp. Arr.. Clr.. Tot.. Disposition...
1123 (LINDEN, JOHN)            09/25/09 13:40 13:41 15:12 01:31 N8 (NO REPORT)

Details  : 2408| 09.25.09 13:17:03| COMP IS IN THE LOBBY OF MAIN JAIL
           WANTING TO FILE A CRIMINAL TRESSPASS REPORT// | MOBL 1123|
           09/25/2009 15:12:43| CONTACTED MR STATON IN REF A CRIMINAL
           TRESPASS COMP THAT HAPPENED AT HIS RESIDENCE 5857 MILLS RD
           ON 09-18-09. MR STATON ADVISED HE LOCATED A 17 YOA MALE BY
           THE NAME OF MATTHEW BRYANT IN HIS DAUGHTER'S BEDROOM CLOSET.
           MR STANTON THAT HE VERBALLY WARNED MR BRYANT TO COME BACK
           TO HIS RESIDENCE IN FRONT OF TWO DCSO DEPUTIES WILSON AND
           VELO. I ADVISED IF MR BRYANT RETURNED TO HIS RESIDENCE TO
           CALL AND A DEPUTY WOULD COME OUT AN ISSUE MR BRYANT A
           CRIMINAL TRESPASS WARNING.

APPENDIX    C

CAC/CPS INVESTIGATION REPORT    Pg 11 OF 18

| Case Name: Stanton,Kim |
|---|
| Case #: 33997830 |

| legal guardian and to the alleged perpetrator. | |
|---|---|
| Notified parent (including absent parent) or legal guardian of interview or examination of a child within 24 hours of contact with child. | Yes |

| Were multiple person identification numbers found on any principal in the a/n history search? | No |
|---|---|
| If Yes, were the multiple person identification numbers merged? | No |

| Was methamphetamine manufacturing alleged at intake? | No |
|---|---|
| Was methamphetamine manufacturing discovered/confirmed during Investigation? | N |

| Abbreviated Investigation? | No |
|---|---|

| Was a Family Team Meeting offered? | No |
|---|---|
| If yes, did it occur? | |

## Investigation Contacts

**Date of Contact:** 11/5/2009
**Person(s) Contacted:**    Herrian,Rachel E
Therapist

**Date Entered:** 11/5/2009
**Purpose:** Gather/Obtain Info

**Narrative:**
**CPS HISTORY:**

None Located

**OTHER SEARCHES:**

None Conducted

**COLLATERAL CONTACTS:**

**11-5-09--Telephone Call to Beth Herrian, Reporter, 817 946 9919**

I spoke with Ms. Herrian regarding the referral. She stated that this was the first time that she met with the family. Ms. Stanton, Mr. Stanton, and Kayla all came in together. The parents told her that a CPS report had already been filed by the school counselor. Kayla told her counselor that her stepfather touched her inappropriately. When she met with Kayla, Kayla told her that when her stepfather moved in when she was in the fourth grade, he fondled her and tried to penetrate her while they were in the pool. Recently, during the summer, she came out of the shower and was in a towel. He made inappropriate comments to her and then pushed her down on the bed. She stated that Ms. Stanton reported not knowing what to believe. Mr. Stanton focused on what a bad kid Kayla is. Ms. Stanton sent the children to stay at a friend's house until the issue is resolved. Mr. Stanton was very concerned about Kayla and Rachel staying some place together because he didn't want Kayla convincing Rachel to lie and say things about him as well. Ms. Herrian reported that this was a red flag to her. She stated that she is scheduled to see the mother and Kayla again on the 19th.

**SCREENER'S ASSESSMENT:**

APPENDIX    D

CAC/CPS INVESTIGATION REPORT    Pg 16 OF 18

| Case Name: Stanton,Kim |
|---|
| Case #: 33997830 |

**Narrative:**
TCT Erika Chupp, School Counselor at Ryan HS

Ms. Chupp explained that Mr. Stanton called the school and spoke with Ms. Chupp about changing Kayla's class schedule to move her out of classes that she had with her boyfriend. She said she called Kayla into her office to discuss the changes and Kayla said her stepdad is only doing that because he's jealous of her boyfriend because he'd rather have her. Ms. Chupp said she asked Kayla what she was talking about and advised her that she's making a strong allegation against her stepdad. She said she told Kayla that her poor decisions and breaking her parent's rules are not helping her credibility but Kayla said her boyfriend has helped her gain confidence in telling about the abuse and now she stands up to her stepdad. Ms. Chupp said she has lost respect for her mom because her mom ignores she and her sister when they try to tell her about her stepdad. Ms. Chupp said Kayla is a straight A AP student and is very involved in school. She said in her opinion, Kayla is credible. She added that the stepdad came in with the mother and was irate about the allegation made against him. She asked him to leave the office and he did as well as the mother, who left looking intimidated.

**Date of Contact:** 11/20/2009
**Person(s) Contacted:** Stanton,Luke A
**Narrative:**

**Date Entered:** 11/20/2009
**Purpose:** Gather/Obtain Info

Luke Stanton stopped by the Advocacy Center to talk to me. We didn't have a scheduled appointment but he wanted to know when he could go back home. He said his family is falling apart and his goats are dying because no one is taking care of them. I explained that he wouldn't be able to move back home until this case is resolved and him taking a polygraph could greatly help speed this process along. He said he would take and pass a polygraph. He said he will wait for Investigator Crow to schedule this for him. I told him that instead of me interviewing him again, I would review he and Investigator Crow's interview from 11/13/09. He stated that this was fine since it was recorded and on a DVD. He stated that he didn't touch Kayla or sexual abuse her in any way. He said this is a result of Kayla being angry at he and Mrs. Stanton for trying to end Kayla and her boyfriend's relationship.

**Date of Contact:** 11/23/2009
**Person(s) Contacted:** Law Enforcement
**Narrative:**
TCF Inv. Crow

**Date Entered:** 1/10/2010
**Purpose:** Gather/Obtain Info

Mr. Stanton is scheduled to polygraph on 12/2/09 after the Thanksgiving Holiday. He will notify me of the results.

**Date of Contact:** 12/2/2009
**Person(s) Contacted:** Law Enforcement
**Narrative:**
TCF Inv. Crow

**Date Entered:** 1/10/2010
**Purpose:** Gather/Obtain Info

Mr. Stanton passed his polygraph. He showed no signs of deception. Inv. Crow is unfounding his case.

TCF Kim Stanton--left message

TCF Luke Stanton--left message

**Date of Contact:** 12/3/2009
**Person(s) Contacted:** Stanton,Kim
Stanton,Luke A

**Date Entered:** 1/10/2010
**Purpose:** Gather/Obtain Info

APPENDIX     F

CAC/CPS INVESTIGATION REPORT    Pg 18 OF 18

| Case Name: Stanton,Kim |
|---|
| Case #: 33997830 |

could as long as I could send her a letter stating that it would be closed and the matter was investigated. I agreed to do so and faxed it over.

**Date of Contact:** 1/14/2010
**Person(s) Contacted:** FPS Staff
**Narrative:**
Staffed case with Supervisor Brenda Brooks

**Date Entered:** 1/14/2010
**Purpose:** Staffed Case



Sexual abuse of Kayla Bennett (17yr old) by Luke Stanton (Stepfather) is "unable to determine." Kayla reported that her stepfather digitally penetrated her several times beginning in the 4th grade and ending the summer of 2009. These allegations came about after Kayla's stepfather and mother tried to sever her relationship with a boy who they thought was a bad influence on Kayla. Law enforcement investigated and polygraphed the stepfather who passed the polygraph without showing any signs of deception. Law enforcement unfounded and closed their case. Kayla has since turned 18 and was moving out of her mother and stepfather's home into her father or boyfriend's home. Counseling was obtained by the family at Counseling Center of Denton.

  Sexual abuse of Racheal Bennett (13yr old) by Luke Stanton (Stepfather) is ruled out. Racheal reported that her stepdad touched her private area on top of the clothes when he was putting medication on a bug bite on her lower leg. Racheal had previously made the same outcry and it was investigated and ruled out.

**Date of Contact:** 1/15/2010
**Person(s) Contacted:** Herrian,Rachel E
**Narrative:**

**Date Entered:** 1/15/2010
**Purpose:** Reporter

**Date of Contact:** 1/15/2010
**Person(s) Contacted:** Stanton,Luke A
**Narrative:**

**Date Entered:** 1/15/2010
**Purpose:** Parent/Guardian

**Date of Contact:** 1/15/2010
**Person(s) Contacted:** Stanton,Kim
**Narrative:**

**Date Entered:** 1/15/2010
**Purpose:** Parent/Guardian