STATE of Missouri, Respondent,

v.

Kevin E. HICKS, Appellant.

No. SC 92402.

Supreme Court of Missouri,
En Banc.

Feb. 26, 2013.

Modified on Court's Own Motion
March 19, 2013.

Ellen H. Flottman, Public Defender's Office, Columbia, for Appellant.

James B. Farnsworth, Attorney General's Office, Jefferson City, for Respondent.

PATRICIA BRECKENRIDGE, Judge.

Kevin E. Hicks appeals the judgment following his convictions and sentences for two counts of first-degree robbery, one count of forcible rape, one count of attempted forcible rape, and five counts of forcible sodomy. On appeal, he claims the trial court erred in admitting into evidence his incriminating statements to police because the statements were made involuntarily in reliance on an agreement the state has failed to honor. Mr. Hicks also claims that there is not sufficient evidence to support his conviction of two separate counts of first-degree robbery, which the state concedes. This Court finds that the trial court did not err in admitting Mr. Hicks' pretrial statements. Based on the state's concession, this Court vacates Mr. Hicks' conviction for the second count of first-degree robbery.

**Facts and Procedural Background**

In Kansas City, during the early morning hours of August 5, 1992, Mr. Hicks and five other men, armed with firearms, accosted a male and female on the street outside the male's home.[1] Mr. Hicks and his associates ordered the couple into the house. The men kept the male victim downstairs at gunpoint and forcibly stole keys and a videocassette recorder from him. Then, five of the assailants took the female victim to an upstairs room and took turns sexually assaulting her. The six men present that night would change posi-

---

1. The victims' names are withheld pursuant to section 566.226, RSMo Supp.2011.

tions, sending one downstairs while another would come up, but five men remained constantly with the female victim. At the end of the attack, the men left the house in a hurry, believing that there were police in the neighborhood.

These crimes remained unsolved until 2008, when DNA collected shortly after the incident from a rape kit matched the DNA of Elbert Hicks, Mr. Hicks' cousin. Investigators were aware that the August 1992 offense involved six African–American male perpetrators. They developed a list of six suspects, including Mr. Hicks, based on Elbert Hicks' known associates in 1992. Five of the six men police identified as suspects in 2008, including both Elbert and Kevin Hicks, had been suspects in the crimes in 1992. Investigators found Mr. Hicks at the Jefferson City Correctional Center, where he was serving time for a series of robberies, an attempted rape, and armed criminal action, all unrelated to the August 1992 crimes. Mr. Hicks was scheduled for release in 2018.

In March 2008, Kansas City police detectives visited the Jefferson City Correctional Center to interview Mr. Hicks. At the beginning of the interview, Mr. Hicks was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He signed a written waiver and agreed to talk. He admitted some involvement in the 1992 incident but was vague and did not provide details. Mr. Hicks also provided information indicating that he had knowledge of other unresolved crimes, including a rape and a murder in Kansas. He told the detectives that he wanted to help them and give closure to the victims but that he also wanted to get the best agreement possible for himself. The detectives suggested that he get an attorney to negotiate an agreement with the prosecutor, but he declined. When the detectives had difficulty making

contact with the prosecutor, Mr. Hicks continued to speak to them, volunteering significant information without any reciprocal promise of leniency or any plea agreement.

After the detectives finally made contact with a Jackson County assistant prosecutor, Mr. Hicks was made the following offer in writing:

If Kevin Hicks provides information that leads to the filing of a criminal charge or charges against one or more individuals involved in criminal activities for which he has personal knowledge, in each of the instances in which he has such knowledge, including the August 5, 1992 crimes against [female victim] and [male victim] at 3410 Smart, Kansas City, Jackson County, Missouri, then the Jackson County Prosecutor's Office will agree that Kevin Hicks be sentenced to a term of imprisonment for his involvement and participation in these crimes to be served concurrently with Kevin Hicks' current prison sentences.

Initially, Mr. Hicks was dissatisfied with the agreement as presented. He explained that he did not want to serve any additional time as a result of the offenses in which he was prepared to implicate himself and wanted a guarantee from prosecutors that he could keep his current "outdare" (*i.e.*, the date he would be released from prison), scheduled for 2018. After speaking further with the prosecutor's office, the detectives told Mr. Hicks that the written agreement was the only offer prosecutors were willing to make. The detectives told Mr. Hicks that "they're not going to specify a date or anything like that because they don't know exactly what you're gonna tell us." Mr. Hicks agreed to talk.

Mr. Hicks then gave the detectives a detailed account of the August 5, 1992, incident, including the identity of his five

accomplices. He acknowledged being armed with a shotgun, that he guarded the male victim downstairs and looked for things to steal, and that he observed his cousin and two others rape and sodomize the female victim, although he denied personally engaging in any sexual contact with her. Toward the end of the interview, the detectives asked Mr. Hicks why he had given them this information. Mr. Hicks said he had taken classes and participated in programs while in prison that advised inmates to take responsibility for their actions and that he felt empathy for the victims, was ashamed of his conduct, and wanted to be a better person. He agreed that by cooperating he could "help [himself] heal from the wrongs [he] had done to others." He said he knew he could have gotten a lawyer and refused to talk, but decided he had to admit his wrongdoing and deal with it. Mr. Hicks said he was "glad to have this off [his] chest."

On two later occasions, in July and September 2008, the detectives spoke to Mr. Hicks and videotaped his statements. Before each interview, Mr. Hicks was advised of his *Miranda* rights and signed a written waiver. *See* 384 U.S. 436, 444–45 86 S.Ct. 1602 (1966). At the end of the first of these interviews, Mr. Hicks again stated that he was cooperating because "it's the right thing to do" and because he had come to empathize with the victims.

The detectives were not armed during the interviews and testified that they never threatened or coerced Mr. Hicks. Aside from the written agreement from the prosecutor, the detectives made no promises regarding any benefit Mr. Hicks might receive by cooperating. On October 24, 2008, Mr. Hicks was charged by indictment with two counts of first degree robbery, six counts of forcible sodomy (one of

which was dismissed before submission), one count of forcible rape, and one count of attempted forcible rape.

Subsequent to his indictment, it became apparent that, if convicted on all counts, Mr. Hicks' sentences for any sexual offenses would have to run consecutively to his sentences for the robbery counts by operation of section 558.026.1.[2] *See generally Williams v. State*, 800 S.W.2d 739, 740 (Mo. banc 1990). Mr. Hicks filed a motion to suppress his pre-trial statements, claiming such mandatory consecutive sentencing would violate his agreement with the state.

The trial court held a hearing regarding Mr. Hicks' motion to suppress. The only testimony at the suppression hearing was offered by the two detectives who negotiated the agreement with Mr. Hicks. The trial court took the motion under advisement to review the evidence in one video-recorded and three audio-recorded recordings of Mr. Hicks' encounters with the detectives over the course of four days.

Defense counsel argued that Mr. Hicks made his statements because he expected that, in return for his cooperation, he would receive "one sentence that goes concurrent with ... all of the various sentences that he is doing." Because section 558.026.1 requires that sentences for the sex offenses run consecutively to the other offenses, Mr. Hicks' counsel argued that the state would be unable to fulfill its part of the bargain. Accordingly, Mr. Hicks contended that his statements were involuntary because they were induced by an agreement the state could not honor.

In response, the state argued that there was no agreement as to any particular sentence arising from the charges in this case. The state contended that the only agreement was that the term of imprison-

**2.** All statutory references are to RSMo 2000 unless otherwise indicated.

ment from this case would run concurrently with the sentences Mr. Hicks was already serving, and the state stood ready to comply with that agreement.

The trial court made an oral ruling overruling Mr. Hicks' motion to suppress before trial. After trial, the court issued a written order memorializing its decision. The court's written order found that "[a] review of the recorded statements made by the defendant leads to the inescapable conclusion that defendant made each statement voluntarily." The court found no evidence that Mr. Hicks had been coerced and that "[t]here was no attempt to mislead Mr. Hicks in any way." The court emphasized that "Mr. Hicks was given a *Miranda* warning at or near the beginning of each of the recorded statements which he gave" and "voluntarily waived his right to remain silent." The court also noted that Mr. Hicks spoke at length with one of the detectives, including about the underlying offenses, while they awaited final word from the prosecutor's office. "It is obvious from the tape-recorded statements that Mr. Hicks felt very comfortable speaking freely to [this] Detective," and that these pre-agreement "statements were not made in response to any promise of leniency or any plea agreement."

As to the written agreement, the circuit court found that it did not make any commitment as to Mr. Hicks' punishment in connection with the August 5, 1992, incident. According to the trial court, "[t]here was no deception or false promise made by either side. The agreement was simply that the state would recommend that any new sentence he received would run concurrent to the one which Mr. Hicks is now serving." Furthermore,

> [w]hen examining the sentence that must be imposed in this case, given Mr. Hicks' conviction on both sex and non-sex felonies, the State's position has not changed. Even though sentences on some counts may run consecutive to sentences on other counts, the State still maintains the position that the sentence should run concurrent to Mr. Hicks' current sentence. There has been no deviation from that position by the State.

Mr. Hicks was convicted on all nine counts submitted to the jury. He was sentenced to 15 years for each of his two first degree robbery convictions, with those sentences to run concurrently to each other. The court sentenced Mr. Hicks to 30–year sentences for each of the seven sexual offenses. Those sentences were ordered to run concurrently to one another but consecutively to the sentences for the two first-degree robbery convictions, as required by section 558.026.1. The court ordered that Mr. Hicks' term of imprisonment for the present convictions run concurrently to the other sentences he then was serving.

Mr. Hicks appealed. Following an opinion by the court of appeals, this Court granted transfer. Mo. Const. article V, section 10.

## Standard of Review

In reviewing the trial court's ruling on a motion to suppress, an appellate court considers the evidence presented at the suppression hearing and at trial to determine whether sufficient evidence exists to support the trial court's ruling. *State v. Gaw*, 285 S.W.3d 318, 319–20 (Mo. banc 2009). The facts and reasonable inferences therefrom must be viewed in the light most favorable to the trial court's ruling. *State v. McNeely*, 358 S.W.3d 65, 68 (Mo. banc 2012). The trial court's decision overruling a motion to suppress will be reversed only if it was clearly erroneous. *Id.*

## Analysis

### I.

 Mr. Hicks contends that his confession was involuntary because he did not receive the benefit of his bargain. He claims that his bargain entitled him to serve all of his new sentences concurrently to those he already was serving. He alleges the state violated that bargain when the sentences for two counts of rape and five counts of sodomy were made to run consecutively to his sentences for first-degree robbery. A defendant is denied due process if his conviction is premised, in part or in whole, on an involuntary confession. *Berghuis v. Thompkins,* 560 U.S. 370, ——, 130 S.Ct. 2250, 2260–61, 176 L.Ed.2d 1098 (2010); *State v. Brown,* 246 S.W.3d 519, 528 (Mo.App.2008). A voluntary waiver of *Miranda* rights must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis,* 130 S.Ct. at 2261 (inner citations omitted). "The test for whether a statement is voluntary 'is whether the totality of circumstances created a physical or psychological coercion sufficient to deprive the defendant of a free choice to admit, deny or refuse to answer the examiner's questions' and 'whether the physical and psychological coercion was of such a degree that the defendant's will was overborne at the time he [made the statement]'" *State v. Dixon,* 332 S.W.3d 214, 218 (Mo.App. 2010) (internal citations and quotations omitted, alteration in original). " 'A promise to a defendant in custody does not *per se* make any statement he gives thereafter involuntary.' " *Id.* (quoting *State v. Stokes,* 710 S.W.2d 424, 428 (Mo.App.1986). " '[W]hether a statement is admissible hinges on its voluntariness in light of the totality of the circumstances, not on whether the promise was made.' " *Id.* (quoting *Stokes,* 710 S.W.2d at 428). In gauging the voluntariness of an inculpatory statement made in reliance on a promise,

[a]ll the circumstances surrounding the statement must be considered in determining if the defendant's will was overborne by the promise. The nature of the promise must be considered.... The waiver of *Miranda* rights, while not dispositive of the question of voluntariness, is an important consideration. Other factors to consider include the defendant's physical and mental state, the length of questioning, the presence of police coercion or intimidation, and the withholding of food, water, or other physical needs.

*Dixon,* 332 S.W.3d at 218 (citations and internal quotation marks omitted).

 Because each of Mr. Hicks' encounters with the detectives has been recorded, and because the prosecutor's agreement was reduced to writing, none of the facts of this case are disputed. The exact wording of the agreement states:

If Kevin Hicks provides information that leads to the filing of a criminal charge or charges against one or more individuals involved in criminal activities for which he has personal knowledge, in each of the instances in which he has such knowledge, including the August 5, 1992 crimes against [female victim] and [male victim] at 3410 Smart, Kansas City, Jackson County, Missouri, then the Jackson County Prosecutor's Office will agree that Kevin Hicks be sentenced to a term of imprisonment for his involvement and participation in these crimes to be served concurrently with Kevin Hicks' current prison sentences.

Mr. Hicks contends that this agreement was intended to make each of his new sentences be served concurrent to each other and concurrent to the sentences he was then serving. The agreement states

he would be sentenced to "a *term* of imprisonment for his involvement and participation in these crimes to be served concurrently" (emphasis added) with his current sentences. However, because Missouri law requires sentences for sexual offenses to run consecutively to those for non-sexual offenses, section 558.026.1, Mr. Hicks argues he was sentenced to *two terms* of imprisonment running concurrently with his prior sentences. As a result, Mr. Hicks claims this statute required that he be sentenced to one term of 15 years, consisting of concurrent sentences for the two robbery counts, and a second term of 30 years for concurrent sentences for the sodomy and rape counts, instead of receiving the benefit of his agreement.

Mr. Hicks' interpretation of the agreement primarily rests on his reading of the words "a term of imprisonment" as they are included in his agreement. His interpretation of that phrase, however, is inconsistent with how it has been interpreted in prior cases.[3] Missouri case law recognizes that the phrase "term of imprisonment" can have two usages. In the first sense, courts have used the phrase to refer to the aggregation of all of the sentences. *See, e.g., Burnett v. State,* 311 S.W.3d 810, 813, 815 (Mo.App.2009) ("[T]he plea court sentenced Movant to consecutive prison terms of twenty years for child kidnapping, twenty years for first-degree assault, ten years for forcible sodomy, and ten years for forcible rape;" later stating that "[t]he plea court . . . sentenced Movant to *a term of imprisonment* totaling sixty years." (emphasis added)).

Otherwise, the phrase has been used to refer to a single sentence. *See, e.g., State v. Avery,* 275 S.W.3d 231, 232 (Mo. banc 2009) ("The two convictions resulted in concurrent terms of imprisonment for 15 and 35 years, respectively."). Mr. Hicks, however, proposes a third meaning for the phrase, arguing that he spoke with authorities based on the belief that, in his agreement, a "term of imprisonment" refers to an aggregate term where all of his sentences are served concurrently to each other. Under this belief, he would have received only a single grouping of concurrent sentences. The question is whether Mr. Hicks' interpretation of his agreement with the state is reasonable under the circumstances.

The record shows that Mr. Hicks prepared to implicate himself and others in at least two separate incidents in addition to the August 5, 1992, home invasion-including an encounter near a Quik Trip convenience store that resulted in one of Mr. Hicks' associates raping a woman and an episode resulting in a murder in Kansas. Moreover, the record shows that Mr. Hicks was reasonably aware that he could face conviction for multiple crimes, including both sexual and non-sexual offenses, arising out of the August 5, 1992, attack. The following colloquy occurred at the suppression hearing, during cross-examination of one of the detectives who interviewed Mr. Hicks:

Q: And there was—there was talk, wasn't there, about whether or not—because this was—this case involved a robbery and a sexual assault on a lady that he said he didn't have anything to do with; correct?

A: Correct.

Q: And so there was talk about him being charged with the robbery but not necessarily the sexual assault, because he didn't have anything to do with those, is that correct?

---

**3.** The issue in each of the cited cases was not the meaning of the phrase "term of imprison-ment." Nevertheless, this Court notes how the term was used.

A: No. In fact, he actually brought up that point, the part that he was going to be charged for the rape because he was there during its commission, and he understood that if he was there during the commission of a crime, that he will be charged and convicted of that same crime even if he didn't participate in the act.

Mr. Hicks had made attempts to obtain specific guarantees for his sentences, including exactly how much time he would serve and the date he would be released. Nevertheless, the prosecutor refused to agree to such specifics. To justify the prosecution's refusal, the recorded transcript shows one of Mr. Hicks' interrogating detectives told him that the prosecutor was "not gonna specify date or anything like that because they don't know exactly what you're gonna tell us." In spite of the prosecution's refusal to negotiate the agreement, the record shows that Mr. Hicks willingly participated in his interrogations, repeatedly stating his wish to make amends for his past wrongs and to improve himself as he has learned through 12–step programs.

These facts clearly support the trial court's finding that Mr. Hicks' statements were not involuntary. The facts show that the agreement was not intended to preserve Mr. Hicks' previous release date or commit the state to any specifics about how Mr. Hicks' new sentences were to be imposed other than that they would start concurrent to his former sentences. The facts also clearly support a finding that the prosecutor was unwilling to limit the State to any particular sentence before learning what Mr. Hicks would confess. Nevertheless, Mr. Hicks' interpretation of the phrase "term of imprisonment" specifically

would have excluded any penalty for sexual crimes. The evidence does not require the trial court to have found that Mr. Hicks reasonably believed his agreement required all of his new sentences to run concurrently to each other as well as those he was already serving. Mr. Hicks' agreement reasonably could not have meant anything other than *one* aggregate "term of imprisonment," composed of multiple sentences. Mr. Hicks was given the best agreement that the prosecutor was willing to offer.[4] Furthermore, the facts do not support a conclusion that Mr. Hicks was coerced in any way. After examining the totality of the circumstances, Mr. Hicks' confession could have only been voluntary. His conviction, therefore, stands.

## II.

■ Mr. Hicks also claims that he was subjected to multiple punishments for the same offense, in violation of the Double Jeopardy Clause of the United States Constitution, when he was convicted of two counts of first-degree robbery, one for stealing the male victim's keys and the other for stealing a video cassette recorder from the male victim. He asserts that he cannot be subject to multiple convictions for taking multiple items of property from the male victim in the course of a single incident. Mr. Hicks cites *State v. Whitmore*, 948 S.W.2d 643, 649–50 (Mo.App. 1997), and *White v. State*, 694 S.W.2d 825, 828 (Mo.App.1985), in support of this argument. *See also, e.g., State v. Bohlen*, 284 S.W.3d 714, 718–20 (Mo.App.2009).

The state concedes this point, agreeing that Mr. Hicks cannot be subjected to two separate robbery convictions where, through the use of a single, continuous act of force, he and his cohorts stole two

---

**4.** It should be noted that Mr. Hicks benefits from the terms of the March 2008 agreement. As it turns out, roughly 22 percent of his new term of imprisonment will run concurrently to his existing sentences as a result of that agreement.

things that were in the male victim's possession.

In light of the states concession and Mr. Hicks' correct characterization of the law, Mr. Hicks' second count of first-degree robbery is vacated.

### Conclusion

Mr. Hicks' conviction for first-degree robbery, as charged in the second count, is vacated. In all other respects, the judgment is affirmed.

TEITELMAN, C.J., RUSSELL, FISCHER, STITH and DRAPER, JJ., concur.

WILSON, J., not participating.