

# Missouri Court of Appeals

## Southern District

### Division Two

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| vs. | )　No. SD33681 |
| | )　Filed: November 16, 2015 |
| JASON WILLIAM HANAN, | ) |
| | ) |
| Appellant. | ) |

### APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

Honorable David Gregory Warren, Circuit Judge

## AFFIRMED

Jason William Hanan ("Hanan") appeals his conviction of the class A felony for first-degree assault of a law enforcement officer, the class D felony of resisting a lawful stop, and the class B felony for possession of a controlled substance with the intent to distribute. Hanan presents one point on appeal. Finding no merit to Hanan's point, we affirm the trial court's judgment and sentence.

## Factual and Procedural Background

Hanan does not challenge the sufficiency of the evidence to support his conviction, but only the sufficiency of the evidence to support the trial court's decision to reject his motion to suppress evidence.

In reviewing a trial court's decision to overrule a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial to determine whether there was sufficient evidence to support the trial court's decision. *State v. Hosier*, 454 S.W.3d 883, 891 (Mo. banc 2015). In making this determination, we defer to the trial court's credibility determinations and factual findings. *Id.*

On the afternoon of February 16, 2012, Officer Benjamin Tinsley, a police officer with the Rolla Police Department, observed the driver of a Chevrolet Impala, later identified as Hanan, behaving suspiciously. Officer Tinsley observed Hanan following too closely behind a tractor-trailer and stopped Hanan's vehicle. As Officer Tinsley approached Hanan's vehicle, Hanan accelerated away, leading to a high-speed pursuit involving multiple police units and law enforcement agencies.

When officers cornered Hanan with their patrol cars, Hanan accelerated toward Deputy Glenn Suschanke, a deputy with the Phelps County Sheriff's Office, who had exited his vehicle and was approaching Hanan. Deputy Suschanke shouted "sheriff's office, stop," but Hanan continued to accelerate. In response, Deputy Suschanke drew his sidearm and fired at Hanan's car.

After further pursuit, Hanan struck a police car containing another officer, eventually losing control of his vehicle and careening into a mobile home. Officers removed Hanan and his

2

passenger from the car, and Hanan was placed on the ground and handcuffed. Though conscious and alert, Hanan had gunshot wounds to his back, arm and leg.

Officers administered first aid and attempted to stop the bleeding. An ambulance arrived, Hanan was secured to a backboard, and oxygen was administered. As he was being moved into the ambulance, Hanan was read his *Miranda*[1] rights, and confirmed he understood each right explained to him. Hanan conversed coherently with officers and the ambulance crew. Hanan appeared to be "conscious and alert," seemed to understand what was going on, and to have the capacity to "understand and fully appreciate" waiving his *Miranda* rights.

Hanan then volunteered that "he was making a delivery in Arkansas." When an officer asked what he was talking about, he specified that he was "delivering drugs in Arkansas," and that he had thrown drugs "out the window when there was one police officer behind him."

Detective Andy Davis, a division chief with the Phelps County Sheriff's Department, searched Hanan's vehicle. Inside the car, he found what is known as a "grinder," which is used to separate marijuana from stems and seed prior to rolling a cigarette. He also found a digital kitchen scale and about 24 baggies, two of which contained marijuana. Approximately 223 grams (a half-pound) of marijuana was found inside a green canvas cooler that was open and sitting in the backseat of the car. In the trunk of the car, Detective Davis found $1,300 in $100 bills, some with blood on them, and a wallet containing the passenger's driver's license.

Hanan was charged as a prior and persistent offender by a second amended information, with two counts of the class A felony of assault of a law enforcement officer (Counts I and II), pursuant to section 565.081, RSMo Cum.Supp. (2009); one count of the class D felony of resisting a lawful stop (Count III), pursuant to section 575.150, RSMo Cum.Supp. (2009); and

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

the class B felony of possession of a control substance with the intent to distribute (Count IV), pursuant to section 195.211, RSMo Cum.Supp. (2003).

On August 7, 2014, Hanan filed a motion to suppress statements he made, which was denied on August 14, 2014, after a hearing.

A three-day jury trial was held beginning August 25, 2014. During the testimony of Deputy John Scott ("Deputy Scott") a corporal with the Phelps County Sheriff's Department, Hanan's counsel objected to the admission of statements made by Hanan to Deputy Scott. The trial court again overruled the objection.

The jury found Hanan guilty of assault of a law enforcement officer (Count I), resisting a lawful stop (Count III), and possession of a controlled substance (Count IV). Hanan was acquitted on the second count of assault of a law enforcement officer. Having previously found Hanan to be a prior and persistent offender, the trial court sentenced Hanan to 25 years on Count I, 5 years on Count III, and 5 years on Count IV, with the sentences to run consecutive to each other and to any other sentences Hanan might be serving. This appeal followed.

In his one point on appeal, Hanan asserts the trial court erred in failing to grant his motion to suppress his statements because those statements were not voluntary.

The issue for our determination is whether the trial court's decision to reject Hanan's motion to suppress was clearly erroneous.

**Standard of Review**

When reviewing the trial court's decision to overrule a motion to suppress, this Court considers the evidence presented both at the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's decision. This Court defers to the trial court's credibility determinations and factual findings, inquiring only whether the decision is supported by substantial evidence, and reverses only if the trial court's decision is clearly erroneous.

4

*Hosier*, 454 S.W.3d at 891 (internal citations omitted).

## Analysis

Hanan argues that he is entitled to reversal of his convictions because the trial court improperly allowed the State to introduce evidence of incriminating statements he made. Specifically, Hanan argues the trial court erred in finding that Hanan voluntarily and intelligently waived his right to remain silent in that immediately prior to his incriminating statements, he had been shot four times, was without pain medication, had been removed from a car and placed in handcuffs, and was placed on a stretcher with restraints.

> A defendant is denied due process if his conviction is premised, in part or in whole, on an involuntary confession. A voluntary waiver of *Miranda* rights must be made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. The test for whether a statement is voluntary is whether the totality of circumstances created a physical or psychological coercion sufficient to deprive the defendant of a free choice to admit, deny or refuse to answer the examiner's questions and whether the physical and psychological coercion was of such a degree that the defendant's will was overborne at the time he made the statement.

*State v. Hicks*, 408 S.W.3d 90, 95 (Mo. banc 2013) (internal quotations and citations omitted).

Here, following a high-speed pursuit, officers removed Hanan from his vehicle and handcuffed him, at which time officers observed that Hanan had four gunshot wounds: two to his back, one to his leg, and one to his arm. Officers administered first aid, and attempted to stop the bleeding. An ambulance arrived and Hanan was secured to a backboard and oxygen was administered. As he was being moved into the ambulance, Hanan was read his *Miranda* rights, and was asked if he understood each right that was explained to him, which he confirmed. Hanan conversed coherently with officers and ambulance crew. Hanan appeared to be "conscious and alert," seemed to understand what was going on, and to have the capacity to "understand and fully appreciate" waiving his *Miranda* rights.

5

Hanan then volunteered that "he was making a delivery in Arkansas." When an officer asked what he was talking about, he specified that he was "delivering drugs in Arkansas," and that he had thrown drugs "out the window when there was one police officer behind him." This was sufficient evidence from which the trial court could have, and did, determine that Hanan voluntarily waived his *Miranda* rights. Even though Hanan was in custody, wounded, and had not yet been administered pain medication, there was direct testimony, much of which was elicited by defense counsel, that Hanan was coherent, alert, appeared to understand what was going on, and seemed to have the capacity to "understand and fully appreciate" his *Miranda* rights and his waiver thereof. Quite simply, the mere fact that a defendant is wounded, in custody, and has not yet received pain medication does not, as a matter of law, obviate otherwise competent evidence—such as that present in this case—that Hanan voluntarily waived his right to remain silent. *See State v. Bucklew*, 973 S.W.2d 83, 89-90 (Mo. banc 1998); *State v. Thomas*, 522 S.W.2d 74, 75 (Mo.App. ST.L.D. 1975).

Hanan principally relies on *Mincey v. Arizona*, 437 U.S. 385 (1978), which is distinguishable from this case. There, an officer attempted to interrogate defendant while he was in the intensive care unit of a hospital. *Id.* at 398-99. After receiving a *Miranda* warning at around 8:00 p.m., the defendant "asked repeatedly that the interrogation stop until he could get a lawyer," *id.* at 398, but the officer continued to interrogate defendant until midnight. During the interrogation, defendant complained of "unbearable" pain, and was "evidently confused and unable to think clearly about either the events of the afternoon or the circumstances of his interrogation," as several of his answers were incoherent on their face. *Id.* at 399-400. Despite numerous entreaties by defendant that the questioning cease until he obtained a lawyer, the detective persisted in questioning without relent except when defendant lost consciousness or

was receiving medical treatment. ***Id.*** at 400. The supreme court found that the undisputed evidence in this case indicated that waiver was not defendant's free and voluntary choice, and that his will was simply overborne. ***Mincey***, 437 U.S. at 402.

Here, unlike ***Mincey***, Hanan did not request the questioning stop so he could obtain a lawyer—rather, unprompted, Hanan volunteered the information contained in his incriminating statements after he was advised of his rights. Additionally, there was direct testimony that Hanan was *not* confused or so overwrought with pain that he lacked reasonable comprehension. To the contrary, the testimony was that Hanan was coherent, alert, appeared to understand what was going on, and seemed to have the capacity to "understand and fully appreciate" his ***Miranda*** rights and his waiver thereof. Further, Hanan's will was not overborne over the course of many hours by an unrelenting and unwavering inquisitor—rather, the interaction here was relatively brief, covering the time between when Hanan received a ***Miranda*** warning while secured on the backboard and being moved into the ambulance, and when he thereafter unilaterally volunteered information that he was delivering drugs and threw some out of his car when a patrol car began following him.

The trial court's decision not to suppress Hanan's statements was not clearly erroneous. Point denied. The judgment and Hanan's sentence are affirmed.

WILLIAM W. FRANCIS, JR., J. – AUTHOR

DON E. BURRELL, P.J., - Concurs

NANCY STEFFEN RAHMEYER, J. – Concurs

7