WILLIAM W. FRANCIS, JR., J.
*113 Steven Henderson ("Henderson") appeals from the judgment of the motion court denying his amended Rule 24.035[1] motion to set aside his conviction of first-degree murder. In one point on appeal, Henderson asserts the motion court erred in denying his post-conviction motion, without an evidentiary hearing, because plea counsel was ineffective for failing to inform him that filing a motion to suppress statements he gave to law enforcement would constitute a viable defense to the charged crime. Because the motion court's denial of Henderson's Rule 24.035 motion without an evidentiary hearing was not clearly erroneous, we affirm.
Facts and Procedural Background
The "facts"-for purposes of our review-are those allegations of fact contained in Henderson's amended Rule 24.035 motion, excluding from consideration such allegations as are refuted by the record[2] or are mere conclusions. Lowery v. State , 520 S.W.3d 474, 478 (Mo. App. S.D. 2017). We set forth facts not otherwise imputed by this standard as necessary for context.
Henderson was charged by amended information with the class A felony of murder in the first degree (Count I), and armed criminal action (Count II). The information alleged that "on or about June 22, 2013, in the County of Miller, State of Missouri, [Henderson] after deliberation, knowingly caused the death of [victim], by stabbing her[.]"[3]
Henderson entered into an Alford[4] plea agreement with the State whereby the State would dismiss Count II-armed criminal action-and waive the death penalty, in exchange for Henderson's plea of guilty to Count I.
A plea hearing was held on November 21, 2014. In response to questions from the judge, Henderson stated that no one had made him any promises, or threatened, or coerced him into pleading guilty; he understood all his rights attendant to a jury trial; he had sufficient time to discuss the matter with his attorneys; his attorneys had done everything he asked them to do, including investigating the matter and discussing potential defenses, and the consequences of his guilty plea; there was nothing he wanted his attorneys to do that they had not done; and in all respects, he was satisfied with their representation. These admissions were also contained in the plea agreement, entered into evidence as Exhibit A, and Henderson confirmed to the trial court that the signature on the plea agreement was his, and that all of the statements made in the plea agreement, *114 both typewritten and handwritten, were true.
The plea court then indicated the range of punishment for the charge of murder in the first degree was life in prison without eligibility for probation or parole. Henderson voiced his understanding of the range of punishment.
The plea court, reciting its recognition that Henderson would be making an Alford plea, confirmed Henderson's understanding that if the case were to proceed to trial, the State's evidence would be that on or about June 22, 2013, Henderson, after deliberation, knowingly caused the death of victim by stabbing her. Henderson expressed his understanding of the State's evidence, and confirmed he had the opportunity to review all of the State's evidence before entering into the plea agreement. Henderson affirmed that the State's evidence was consistent with the facts as read, that if the State presented that evidence at trial, there was a reasonable likelihood that a judge or jury would convict him of felony first-degree murder; and in order to accept the benefit of the negotiated plea, wished to enter an Alford plea of guilty to the class A felony of first-degree murder.
The plea court accepted Henderson's Alford plea of guilty and entered separate "Findings of Facts by the Court," finding that: Henderson understood the charges against him and the consequences of his plea; Henderson voluntarily, freely and intelligently waived his rights; Henderson understood and assisted his attorneys; Henderson was ably and competently assisted by his attorneys; there was no probable cause to believe Henderson received ineffective assistance of counsel; Henderson had no mental disease or defect defense; Henderson's plea of guilty was made freely, voluntarily and intelligently; and there was a factual basis for Henderson's plea.
After Henderson's waiver of the sentencing assessment report, the trial court sentenced Henderson to life imprisonment in the Department of Corrections, without the possibility of probation or parole.
On January 23, 2015, Henderson timely filed a pro se Rule 24.035 motion. On January 26, 2015, the motion court appointed the public defender to represent Henderson. An entry of appearance was filed on April 6, 2015, and a thirty-day extension was granted for filing an amended motion. The transcript of the guilty plea and sentencing hearing was filed on June 17, 2015. An amended motion was filed on July 20, 2015.
In his amended motion, Henderson asserted plea counsel was ineffective for failing to "file and litigate a motion to suppress [Henderson]'s alleged confessions on the basis said statements were rendered involuntary by what amounted to promises of leniency by the interrogating officer."
On November 22, 2016, the motion court entered its "Findings of Fact, Conclusions of Law and Judgment." The motion court found that after review of the amended motion and all files and records in the case, as well as the underlying criminal case, that the records conclusively showed that Henderson was not entitled to relief, and was not entitled to an evidentiary hearing. The motion court sustained the State's objection to the evidentiary hearing, and denied Henderson's amended motion on the basis of the pleading, without considering the evidence adduced at the hearing.
In one point on appeal, Henderson asserts the motion court clearly erred in denying his amended Rule 24.035 motion without an evidentiary hearing.
*115 Standard of Review
To prevail on a claim of ineffective assistance of counsel, a movant must show that counsel did not demonstrate the customary skill and diligence that a reasonably competent attorney would display when rendering similar services under the existing circumstances, and that movant was prejudiced as a result. Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Where conviction results from a guilty plea, "any claim of ineffective assistance of counsel is immaterial except to the extent that it impinges the voluntariness and knowledge with which the plea was made." Cooper v. State , 356 S.W.3d 148, 153 (Mo. banc 2011) (internal quotation and citation omitted).
"This Court limits its review of the overruling of a Rule 24.035 motion to whether the motion court's findings of fact and conclusions of law are clearly erroneous." Stanley v. State , 420 S.W.3d 532, 539 (Mo. banc 2014). "The motion court's findings and conclusions are clearly erroneous only if, after review of the record, the appellate court is left with the definite and firm impression that a mistake has been made." Id. (internal quotations and citations omitted).
To receive an evidentiary hearing, a movant's motion for post-conviction relief must allege facts, not conclusions, warranting relief; the facts alleged must not be refuted by the record; and the allegations complained of must have prejudiced the movant. Prejudice is established if a reasonable probability exists that, but for plea counsel's errors, the movant would not have entered a guilty plea and would have insisted on proceeding to trial.
Lowery , 520 S.W.3d at 478 (internal quotations and citations omitted).
Analysis
In his sole point relied on, Henderson argues that the motion court clearly erred in denying his Rule 24.035 motion without an evidentiary hearing. Specifically, Henderson argues that plea counsel failed to advise him as to the likelihood of success of a motion to suppress statements made during a police interview, and the lack of such knowledge made his guilty plea involuntary. Henderson's amended Rule 24.035 motion alleged facts consistent with his point relied on.
A movant is not entitled to an evidentiary hearing on a Rule 24.035 motion unless the motion's allegations of fact-excluding conclusions or matters refuted by the record-warrant relief. Stanley , 420 S.W.3d at 544. Where ineffective assistance of counsel is claimed, warrant of relief must be demonstrated by such allegations of fact which, if true, are sufficient to demonstrate that: (1) "trial counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney[,]" and (2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Webb v. State , 334 S.W.3d 126, 128 (Mo. banc 2011) (internal quotations and citations omitted). If a movant's Rule 24.035 motion fails in any of these particulars, "a hearing shall[5 ]not be held." Rule 24.035(h) (emphasis added).
*116 The basis of Henderson's Rule 24.035 claim is grounded in the following assertions in his amended motion:
Movant's guilty plea was involuntary, unknowing, and unintelligent because plea counsel John Tomlin, failed to file and litigate a motion to suppress movant's alleged confessions on the basis said statements were rendered involuntary by what amounted to promises of leniency by the interrogating officer. Had counsel filed and litigated a motion [to] suppress movant's confessions the Court would have excluded any statements made by movant to Officer Eric Stacks and with said statements or admissions excluded from evidence, movant would not have pled guilty but would have insisted on proceeding to trial.
....
Counsel received a copy of the interview conducted of movant by Missouri Highway Patrol Corporal, Eric Stacks, on June 23, 2013, beginning at approximately 1800 hours. Prior to any admissions to involvement in the crime, Corporal Stacks advised movant that the victim's body had been found out there on the "40" property and whoever did it will be charged with capital murder, death penalty. He gets movant to agree that whoever did this should get the death penalty. Then he asks movant to come up with 5 reasons or things that would mitigate the nature of this act. He advised movant that he needs to take control of the facts and circumstances and you give me something to go back and tell them other than he is just a first degree murderer. I have to give you the opportunity to explain something. This interview went on for more than two hours including times when the officer left the room. Throughout the interview Corporal Stacks made similar statements to movant that in essence said you will be facing the death penalty if you don't give us some mitigating circumstances or reason why it happened besides premeditated murder. He even proposed scenarios six or eight months down the road and asked how he would feel with his parents in the courtroom hearing that he was charged with capital first degree murder. While not explicitly telling movant that first degree or capital murder would be taken off the table if he cooperated, the overall tenor and content of the interview makes it clear that he is suggesting that cooperation will avoid that scenario.
Reasonably competent counsel would have recognized that movant's statements to Corporal Stacks were involuntarily induced by suggestions that leniency would be given if he could provide reasons why the murder should be mitigated. Likewise, all subsequent admissions were a product or result of the initial taint from the improper interrogation on June 23rd. Such counsel would have filed and litigated a motion to suppress movant's statements or admissions. The prosecuting attorney at one point even suggested to counsel that he file a motion to suppress but counsel declined to do so.
An allegation, as Henderson's, that a confession was procured by a promise of leniency, goes to the underlying voluntariness of the confession.
A defendant is denied due process if his conviction is premised, in part or in whole, on an involuntary confession. A voluntary waiver of Miranda[6 ] rights must be made with a full awareness of *117 both the nature of the right being abandoned and the consequences of the decision to abandon it. The test for whether a statement is voluntary is whether the totality of circumstances created a physical or psychological coercion sufficient to deprive the defendant of a free choice to admit, deny or refuse to answer the examiner's questions and whether the physical and psychological coercion was of such a degree that the defendant's will was overborne at the time he made the statement. A promise to a defendant in custody does not per se make any statement he gives thereafter involuntary. Whether a statement is admissible hinges on its voluntariness in light of the totality of the circumstances, not on whether the promise was made. In gauging the voluntariness of an inculpatory statement made in reliance on a promise, all the circumstances surrounding the statement must be considered in determining if the defendant's will was overborne by the promise. The nature of the promise must be considered. The waiver of Miranda rights, while not dispositive of the question of voluntariness, is an important consideration. Other factors to consider include the defendant's physical and mental state, the length of questioning, the presence of police coercion or intimidation, and the withholding of food, water, or other physical needs.
State v. Hicks , 408 S.W.3d 90, 95 (Mo. banc 2013) (internal quotations and citations omitted) (emphasis added). Summarily, "promises do not-by themselves-render all subsequent statements constitutionally involuntary and thus inadmissible. Instead, promises made to the defendant are simply another circumstance to be considered in deciding whether, under the totality of all the circumstances, the defendant's statements were voluntary." State v. Hart , 404 S.W.3d 232, 249-50 (Mo. banc 2013).
Assuming, without deciding, that the statements Henderson alleges were "promises" as to leniency, the remaining facts in his amended motion are insufficient to support his claim.
As an initial matter, while the amended motion suggests that Henderson made certain "admissions" and "confessions" during the interrogation, at no point does it make any factual allegations as to what he admitted or confessed. The amended motion suggests that without these "admissions, the state's case against movant was substantially weaker"-this is not a factual allegation but a conclusion, and we do not consider it. Stanley , 420 S.W.3d at 544. Assuming arguendo Henderson's "admissions" and "confessions" were involuntary and subject to exclusion, we have no way to discern what prejudice-if any-plea counsel's failure to obtain their exclusion caused to Henderson. See Webb , 334 S.W.3d at 128.
Further, Henderson's amended motion errantly presupposes that a promise of leniency per se renders any subsequent admissions involuntary and inadmissible. Rather, a promise of leniency is evaluated under a general voluntariness analysis-that is, "voluntariness in light of the totality of the circumstances, not on whether or not the promise was made." Hicks , 408 S.W.3d at 95. While some details about the purported promises of leniency are alleged, the requisite factual allegations comprising the "totality of the circumstances" are largely absent. For instance, the amended motion alleges no facts as to Henderson's custodial status at the time of his statements, whether he had been Mirandized , whether there was a voluntary waiver of Henderson's Miranda rights, Henderson's physical and mental state, and whether authorities withheld food, water, *118 or materials relating to other physical needs. See id.
Henderson's amended motion asserted that "Movant will rely on the testimony of movant, Steven Henderson and plea counsel John Tomlin and the recordings of the tainted interrogation(s) in this matter as well as any other relevant exhibits or evidence necessary to prove up the facts alleged." We note that neither the recordings of the "interrogation(s)" nor transcripts thereof are part of the legal file before us. The record does not indicate that they were attached to the amended motion.[7] In any event, the amended motion is evaluated by the pled allegations of fact[8] -in other words, allegations of fact contained in the body of the amended motion. Thus, the threshold support for Henderson's amended motion must be found in the fact allegations of the motion itself, if anywhere.
It is fundamental that on appeal the motion court's ruling is presumed to be correct and that the burden is on the appellant to establish that the ruling was erroneous. Having the burden of demonstrating error, it is appellant's obligation to prepare and file a record on appeal that incorporates the proceedings showing that the motion court erred.
Garris v. State , 389 S.W.3d 648, 652 (Mo. banc 2012) (internal quotations and citations omitted).
Henderson does not meet his burden to show, from the record before us, that the motion court clearly erred in rejecting his Rule 24.035 motion without an evidentiary hearing.
The judgment of the motion court is affirmed.
NANCY STEFFEN RAHMEYER, C.J./P.J.-Concurs
JEFFREY W. BATES, J.-Concurs

All rule references are to Missouri Court Rules (2017).

The record before us includes the guilty plea hearing, sentencing proceedings, and associated documentary records. See Barnes v. State , 385 S.W.3d 517, 522 (Mo. App. S.D. 2012). We note that the motion court held an evidentiary hearing on Henderson's Rule 24.035 motion. The State lodged an objection, indicating that Henderson's motion was refuted by the record and should be dismissed. The motion court took the State's objection with the case. After the evidentiary hearing, the motion court sustained the State's objection, and denied Henderson's motion on the basis that it was refuted by the record. As a result, we do not consider or recite matters contained in the evidentiary hearing.

The case was transferred on January 21, 2014, on a change of venue, to Laclede County.

An Alford plea allows a defendant to plead guilty to the charged crime and accept criminal penalty even if he is unwilling or unable to admit he committed the acts constituting the crime. North Carolina v. Alford , 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

"Generally[,] the word 'shall' connotes a mandatory duty. When a statute or rule provides what results will follow a failure to comply with its terms, it is mandatory and must be obeyed." Dorris v. State , 360 S.W.3d 260, 267 (Mo. banc 2012) (internal quotations and citations omitted). "The Missouri Constitution vests [the Supreme] Court with authority to establish rules relating to practice, procedure and pleading for all courts. When properly adopted, the rules of court are binding on courts, litigants, and counsel, and it is the court's duty to enforce them." Id. (internal quotations and citations omitted).

Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Cf., Vogl v. State , 437 S.W.3d 218, 223-27 (Mo. banc 2014).

Stanley , 420 S.W.3d at 544.